IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Barry C. Hobson, | : |
| Plaintiff | : Civil Action 2:09-cv-00673 |
| v. | : Judge Watson |
| Michael J. Astrue, Commissioner of Social Security, | : Magistrate Judge Abel |
| Defendant | : |
| | : |

**ORDER**

This matter is before the Court on plaintiff Hobson's May 11, 2010 objections (doc. 12) to Magistrate Judge Abel's May 3, 2010 Report and Recommendation. (Doc. 11.) The Court, having reviewed the record *de novo*, determines that there is substantial evidence supporting the administrative law judge's determination that plaintiff Hobson is not disabled within the meaning of the Act. The Court further finds for the reasons set out below that plaintiff's objections to the Report and Recommendation are without merit.

Plaintiff Barry Hobson maintains that he became disabled in April 2001, at age 40, by injuries to his back and shoulder sustained during an accident that occurred when he was driving a truck crane across a wooden bridge that suddenly collapsed. He was last insured for Social Security disability benefits December 31, 2001. The administrative law judge determined that Hobson retained the residual functional capacity to perform a wide range of light work.

Plaintiff argues that the administrative law judge's decision is not supported by substantial evidence because it is based on a cramped reading of the medical expert's testimony. Plaintiff asserts that Dr. Kendrick identified support in the medical record for Hobson's complaints of severe pain. He further argues that Dr. Kendrick's testimony that Hobson's self-rating of the severity of his pain as 5 out of 10 or 6 out of 10 generally did not preclude work is inconsistent with SSR 96-7p. Finally, Dr. Kendrick testified that the pain medications prescribed to Hobson "commonly cause" sedative effects and sleepiness. (R. 401.) Plaintiff's counsel then sought to question Dr. Kendrick regarding the combined impact upon sustainability of employment, accounting for both the chronic pain syndrome and the medication side effects, but the administrative law judge interrupted before the medical expert could answer. (R. 401.) When plaintiff's counsel resumed his line of questioning, Dr. Kendrick again confirmed with the facts of chronic pain syndrome, narcotic medication, resulting sedative effects, and Hobson's resulting need to sleep during the day. (R. 405.) Plaintiff's counsel then asked if it were true that under those circumstances "a person wouldn't be able to function on a sustained basis throughout an eight hour day, five days a week, day after day and week after week at any level?" (R. 405.) Dr. Kendrick responded, "That's correct." (R. 405.)

Plaintiff also relies on a May 3, 2004 letter to the Rehabilitation Services Commission, by George Knox, Hobson's treating psychologist. Knox said that Hobson took pain medication every two hours, as well as muscle relaxers and sleep medication. (R. 176.) He stated that "[t]he persistent usage of medication" had "accumulative side

2

effects." The "constant influence of pain" interrupted plaintiff's sleep and diminished his depth of sleep, leaving him exhausted during the day. *Id.*

Plaintiff relies on Dr. Kendrick's testimony that the "type of pain" was expected in a normal case with the type of findings in the medical record, but that Hobson had "much greater pain than would be indicated just by reading the medical records." (R. 400.) He testified that such patients have chronic pain syndrome and "are in so much pain that they can't work at all." *Id.*

Dr. Kendrick testified that plaintiff had chronic pain syndrome and had been taking narcotic pain medication throughout his course of treatment. (R. 404.) He also had epidural injections and radial frequency ablations. This course of treatment is typical for patients who have ongoing severe pain. *Id.*

As to the variability of Hobson's pain complaints and his rating the severity of his pain as 5 out of 10 or 6 out of 10, Hobson argues that SSR 96-7p instructs that an adjudicator faced with variable pain complaints "will need to review the case record to determine whether there are any explanations for the variations in the individual's statements about symptoms and their effects." Soc. Sec. Ruling 96-7p. Plaintiff further argues that such an inquiry clearly demands review of the specific case record.

<u>Administrative law judge's findings</u>. The administrative law judge found that the medical evidence regarding Hobson's back impairment did not support his complaints of totally disabling pain:

> I note, first of all, that despite a history of lumbar fusion and extensive post-operative pain management, the laboratory evidence in this case is

3

>not especially compelling. Indeed the MRI dated May 23, 2002, and obtained shortly before the claimant's surgery, showed only grade I spondylolisthesis of L5 and S1, which Dr. Kendrick confirmed is the mildest form of abnormality (Exhibit 15F, p. 23). In addition, while there was degenerative changes of the lower lumbar spine and narrowing of the left neural exit foramen at that time, a post-surgical MRI on April 23, 2003 showed no new herniated disc(s) or stenosis, no enhancing scar, and a generally stable appearance to the lumbar spine (Exhibit 15F, p. 15). The claimant's surgeon, Dr. Leimbach, felt the MRI looked "pretty good" overall (Exhibit 7F, p. 3). Dr. Rebecca Brightman, a neurosurgeon the claimant saw on a consultative basis in July 2004, referred to another MRI which showed lumbar fusion at L5-S1, and *de*compression on the right side, *minimal* enhancing scar and *some* foraminal stenosis (Exhibit 15F, p. 5).

(R. 18.)(Emphasis in the original.) The administrative law judge found that plaintiff's clinical findings were "mixed" and inconsistent with "continuous, debilitating pain." *Id.*

The Report and Recommendation analyzed the administrative law judge's credibility findings regarding Hobson's complaints of totally disabling pain as follows:

>Credibility Determination: Discussion. The administrative law judge stated that the evidence suggests
>>considerable variability of symptoms as opposed to chronic, "disabling" pain, along with a positive response to some forms of treatment. In addition, while the latest progress notes from Dr. Lingam show the claimant has reported an increase in pain in recent months, he has also consistently rated the intensity of his pain at either 5/10 or 6/10 since the beginning of treatment in June 2006 (Exhibits 22F & 24F). . . . Aside from these medical findings, the claimant's activities . . . do not suggest incapacity. To reiterate, the claimant reports (or has reported) that he eats three meals a day, cares for his personal needs, takes turns preparing meals, helps with light cleaning, assists with yard care, drives a car, goes grocery and household shopping, follows sports, watches movies, reads the newspaper, visits friends and family at their homes, attends and volunteers for his church, handles his finances and uses the computer. Moreover, at the hearing, he confirmed that he drove with two others to Iowa recently to attend a wedding. The driving trip alone would require prolonged sitting, while some of the other

4

> chores he mentioned, especially cooking, cleaning and shopping, involve standing, walking, twisting, lifting, carrying and/or pushing. An individual willing and able to perform this wide array of activities is also probably capable of working on a full-time basis.
>
> The claimant reports poor sleep at night and frequent naps during the day, and attributes at least some of this to his medications. Although Dr. Kendrick confirmed that the medications the claimant takes can cause drowsiness, he also stated many people still work while taking them. I see nothing in the claimant's background or physical profile that would make him an exception.
>
> Finally, on a purely subjective basis, the claimant's overall appearance and demeanor at the hearing were incompatible with those of a truly disabled individual.
>
> (R. 20.)

(Doc. 11, at p. 18.) The Magistrate Judge concluded that the administrative law judge's decision to discount plaintiff's complaints of wholly disabling pain was supported by substantial evidence:

> As an initial matter, the medical expert testified that the objective findings did not support Hobson's allegations of severe pain. At the hearing, the administrative law judge acknowledged that individuals can have severe pain despite the lack of objective evidence to support such pain. The administrative law judge properly considered plaintiff's daily activities to evaluate Hobson's allegations of pain. It was not improper for the administrative law judge to consider the April 5, 2004 form completed by Hobson's wife to examine his daily activities. The administrative law judge relied on the variability of plaintiff's symptoms, and the medical expert testified that complaints of pain that are 5/10 or 6/10 generally do not preclude employment. As a result, there is substantial evidence supporting the administrative law judge's credibility assessment.

(Doc. 11, at p. 19.)

Plaintiff Barry Hobson testified that he had no problem lifting 10 pounds. (R. 390.) His testimony about the effects of his medication was equivocal. He said that he couldn't sleep at nights, so he slept half the day. (R. 390.) His attorney later questioned

Hobson about this topic, and he said that he laid down 3-4 times a day because his back hurt. The attorney then asked Hobson whether his medications caused him to sleep. He responded that the Methadone and Neurontin made him sleepy and drowsy, but said that they took the sting out of his back pain but "don't knock you out." (R. 396.)

Hobson testified that if he does light yard work, after 5-10 minutes his "back starts to kill me . . . ." (R. 391.) He goes shopping so he can walk. He tries to help around the house, including with the cooking and dishes. *Id.* Once a month he volunteers at his church's café for homeless people. But he is miserable because of all the standing. (R. 392.) He and his wife don't go to the movies as much as they once did because he can't sit or stand. (R. 393.) Hobson spends time on his computer playing games and using the internet. (R. 395.) Sometimes he can sit at the computer for 20-30 minutes, but other times not as long. (R. 398.)

In July 2002, Dr. Leimbach performed lumbar fusion surgery. (R. 124-26.) Thirty days later, Dr. Leimbach's progress notes indicated that Hobson did not show much discomfort. (R. 19 and 138-39.) Plaintiff only rated his pain level at 3 to 4 on a 10-point scale and Dr. Leimbach recommended increased activity and walking. (R. 19, 135, 137.) Dr. Leimback's November 26, 2010 office notes state that he agrees with a residual functional capacity assessment made by NovaCare. (R. 136.) That assessment ruled out work as a crane operator, but it concluded that Hobson could exert up to 20 pounds of force occasionally and up to 10 pounds frequently. His physical abilities were in excess of the sedentary level of work. He should not engage in production pace work with

constant pushing and/or pulling of arm or leg controls. He could not perform light work requiring significant walking or standing. (R. 147.) Dr. Leimbach's November 13, 2003 office notes state, "He walks okay but the pain is there." (R. 150.) Although Hobson complained of "pain shooting into his right leg," Dr. Leimbach noted that "a recent MRI . . . shows everything to be wide open. There is no stenosis, there is no significant amount of scar tissue, and everything seems to be appropriately in its place." *Id.* On examination, Dr. Leimbach found that plaintiff's "[s]ensory and motor functions look good." *Id.* His gait was normal. There was no myelopathy, neuropathy or significant radiculopathy. The range of motion of plaintiff's back was limited by the surgical fusion. Dr. Leimbach concluded that Hobson had reached maximal medical improvement and that he was "completely and totally disabled for his job as a crane operator." *Id.*

As the administrative law judge noted, despite Hobson's complaints of increased pain, he consistently reported his pain level at only a 5 to 6 on a 10-point scale. (R. 20, 332A, 338, 360, 362, and 364.) The medical expert, Dr. Kendrick, said that this level of pain was compatible with full-time work. (R. 403.) Post-surgery clinical findings were modest. Straight leg raising was negative. Hobson maintained good muscle strength. His reflexes were normal. (R. 186.) He had a good range of motion in his spine. (R. 189.) There was decreased sensation in an S1 distribution and absent right ankle jerk. *Id.*

In April 2003, plaintiff began pain management treatment with Dr. Peter S. Stanos. He prescribed Neurontin, 300 mg, b.i.d., which helped the burning pain in

Hobson's right leg. An MRI showed no evidence of recurrent herniation. Dr. Stanos's impression was "HNP L5-S1 status post cage fusion with residual right L5 neuropathic pain." (R. 151.)

In February 20004, Hobson saw Dr. William R. Zerick, a neurosurgeon, for a second opinion about whether additional surgery would benefit him. Hobson presented as being "really quite miserable. He has undergone a tremendous amount of conservative care and is requiring significant narcotics in the form of Percocet." (R. 188.) The motor examination was within normal limits. There was decreased sensation in a right S1 distribution and an absent right ankle jerk. His range of motion was full and non-pathological. There was mild myofacial tenderness to palpation. Dr. Zerick concluded that Hobson's options were to continue on narcotics for his pain or to under go a surgery to install a posterior element to go along with the existing lumbar interbody graft. Dr. Zerick noted that a posterior element would be of no benefit if the spondylolysthesis was not the source of his continued pain. There were no tests to determine if it was. (R. 189.)

On July 22, 2004, Dr. Brightman indicated that following his lumbar fusion in 2002, Hobson had increased numbness and a constant ache in his right leg. His pain in his low back had also increased. Despite taking Percocet and Neurontin and participating in physical therapy, Hobson did not obtain relief. (R. 185-86.) Dr. Brightman diagnosed failed back syndrome with chronic right leg pain and back pain, status-post lumbar fusion. (R. 186.)

In May 2004, Dr. Cindi Lynn Hill, a family practitioner, reviewed the medical records for the Commissioner and concluded that Hobson could perform light work. (R. 303-08.) In response to a question on the form about whether the severity of the symptoms Hobson alleged and the effects on his function are consistent with the total medical and non-medical evidence, Dr. Hill responded:

> . . . C. Yes – claimant's statements are credible.
>
> Clt alleges he can lift 20#, can stand an hour at a time, can walk around the block, can sit long enough to attend church, drive, help with the shopping/chores, and do self-care.

(R. 307.) In December 2004, Dr. Charles A. Derrow, reviewed the evidence in the file and agreed with Dr. Hill's opinion. (R. 308.)

Dr. Kalyan Lingam a treating pain specialist who gave Hobson a series of epidural steroid injections, first examined plaintiff on June 21, 2006. Diagnostic studies were not available. (R. 345.) On clinical examination, Hobson was tender to palpation over his lumbosacral paraspinal muscles and left piriformis muscle. Straight leg raising was positive at 50 degrees on the right lower extremity following the S1 nerve root. He was negative for any S1 pain. In his lower extremities, Hobson had a full range of motion, no reflex abnormalities, and good muscle strength. There were no sensory deficits. Dr. Lingam's impressions were lumbosacral radiculitis, lumbar sprain, and a depressive disorder. (R. 346.) Dr. Lingam noted "multiple pain generators, including the facet joints, and probable nerve root irritation." *Id.*

Dr. Kendrick's testimony does support plaintiff's position that chronic pain syndrome can be disabling. However, the administrative law judge is the finder of fact and has responsibility for determining the credibility of claimants' pain complaints. Dr. Kenricks testified that Hobson was status post spinal fusion surgery, but his chronic pain syndrome was his main problem. His pain was what was preventing him from working. (R. 399.) Dr. Kenricks testified that had "a relatively minor degree" of spondylolisthesis (rated 1 on a scale of 1 to 4, with 4 being the most severe). The spondylolisthesis would cause pain with heavy lifting or repetitive activities. (R. 400.) Although most people with plaintiff's back impairments could work, some patients with chronic pain syndrome cannot. (R. 400 and 403.) Dr. Kendricks said that many people could work with the pain medication plaintiff was taking. (R. 402.) However, his pain treatment, including epidural steroid injection, narcotic medication, and radial frequency ablations, was treatment "sought by people who have ongoing severe pain;" and if the paid medications caused plaintiff to sleep during the day he could not work. (R. 404.)

It is not the Court's role to sift through the facts and make a *de novo* determination of whether a claimant is disabled. The administrative law judge, not the Court, is the finder of fact. *Siterlet v. Secretary of Health & Human Services*, 823 F.2d 918, 920 (6th Cir. 1987). So long as the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. §405(g). *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In a close case, where there is substantial evidence supporting the

administrative law judge's resolution of the disputed facts, the Court must affirm even if it would likely have resolved the disputed facts in plaintiff's favor had it been a trier of fact. *Nunn v. Bowen*, 828 F.2d 1140, 1144 (6th Cir. 1987); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). There is a large zone of choice where the Commissioner's decision to deny benefits is supported by substantial evidence, and, had the Commissioner granted benefits, that decision also would have been supported by substantial evidence. *Mullen v. Secretary of Health & Human Services*, 800 F.2d 535, 548 (6th Cir. 1986)(*en banc*). In close cases, the Commissioner's decision must be affirmed so long as there is substantial evidence supporting the Commissioner's fact determinations "because there is a 'zone of choice' within which the Commissioner can act, without fear of court interference." *Mullen*, 800 F.2d at 545(citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984))." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

    Social Security Ruling 96-7p did not require the administrative law judge to fully credit plaintiff Hobson's subjective complaints of completely disabling pain. Under the provisions of 20 C.F.R. §404.1529(c)(4), a claimant's symptoms "will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to symptoms . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence." Here there is substantial evidence supporting the administrative law judge's conclusion that the clinical and other medical findings did not support plaintiff's subjective pain complaints. Two physicians who reviewed the medical record for the Commissioner

stated the opinion that Hobson could perform light work. Other than plaintiff's subjective complaints of pain, there is no evidence of nerve root impingement or other back impairment that would preclude light work.

Upon *de novo* review in accordance with the provisions of 28 U.S.C. §636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation. Plaintiff's motion for summary judgment is **DENIED**. Defendant's motion for summary judgment is **GRANTED**. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is **DIRECTED** to enter **JUDGMENT** for defendant. This action is hereby **DISMISSED**.

_____
Michael H. Watson
United States District Judge